JOSÉ CÓRCOLES DROZ, Petitioner and Appellant, *v.* GERARDO DELGADO, WARDEN, ETC., Respondent and Appellee.

No. AP-62-64.        Decided September 23, 1963.

*José Otero Suro,* designated by the Supreme Court to assist defendant on appeal. *José Córcoles Droz* per se. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

This is an appeal from a judgment rendered on June 4, 1962, by the trial court denying a petition for habeas corpus. On December 19, 1962, petitioner-appellant submitted a brief in his own right in support of the petition. The Solicitor General submitted his on January 18, 1963. On January 30 petitioner moved to send up certain records of the district jail of San Juan where he was confined awaiting trial, in order to establish that he always remained there without being submitted to the medical examination ordered by the court, and on April 23, 1963, this Court appointed José Otero Suro to represent appellant in this proceeding and to render him legal assistance, granting him a term of 30 days to file the corresponding brief. The brief was submitted praying for reversal of the judgment. The Solicitor General finally submitted the case on his former memorandum.

This appeal presents the following situation: On February 19, 1952, two informations were filed against José Córcoles Droz, petitioner herein, for grand larceny allegedly committed on December 17, 1951, and January 9, 1952. He was arraigned on February 20, 1952, before Pelayo Román Benítez. It appears from the minutes that this defendant was a vagrant unemployed person. Defendant requested to be submitted to an examination of his mental faculties, to which the district attorney did not object, and on that date, February 20, 1952, Román Benítez issued a written order to commit the defendant to the Psychiatric Hospital of Río Piedras to be examined by a group of psychiatrists who would determine the mental condition of the "patient." He designated Drs. Ramón Fernández Marina, Director of the Psychiatric Hospital, Ramón Señeriz, and R. Troyano de los Ríos to go to the Psychiatric Hospital as soon as they were informed that the "patient" was confined therein, to

examine the "patient" and submit to the court a report on the findings of their investigation. He directed that all proceedings in the case be stayed until receipt of such report, and ordered the district jailer to transfer the "patient" to the Psychiatric Hospital where he was to undergo the examination ordered by the court. The following day, February 21, 1952, copy of that order was sent to Dr. Ramón Fernández Marina, Director of the Psychiatric Hospital, in order that he would inform the district jailer as soon as possible of the date he should send defendant to that institution.

On November 7, 1952, the defendant, in his own right, filed a motion for dismissal alleging that he had been confined in jail for nine months without having been tried. The hearing of this motion was set for November 18, 1952. The court, presided over by Julio Suárez Garriga, denied the motion for dismissal on that date, but ordered (1) that the proceedings be stayed pursuant to the order of February 20, 1952, issued by Judge Román Benítez; (2) that the clerk request from the Director of the Psychiatric Hospital information on (a) the date defendant was committed to that institution; (b) the examinations and treatments undergone by him; (c) conclusion reached by the doctors on defendant's mental health; and (d) the date he was returned to the district jail of San Juan; and (3) that defendant be brought before the court on November 28, 1952, as well as the report of the Psychiatric Hospital. The same day, November 18, 1952, the clerk of the court wrote a letter to the Director of the Psychiatric Hospital in compliance with the order of Judge Suárez Garriga, advising him that the report must be sent to the court by November 28. The proceedings of November 28, 1952, were postponed by reason of illness of defendant's attorney appointed by the court. The record contains summons issued for a hearing of the case on February 9, 1953, and the Director of the Psychiatric Hospital was summoned for that date.

On February 9, 1953, according to the minutes, the defendant appeared before Jesús A. González, assisted by his designated counsel. He waived the jury, pleaded guilty, and on that same date he was sentenced to serve from 5 to 10 years in the penitentiary on each of the informations.

On February 6, 1962, the petitioner, assisted by Víctor Velasco Gordils, of the Legal Aid Society, filed a petition for habeas corpus before the trial court. He alleged under oath that he was tried and sentenced without jurisdiction because the psychiatrists designated by the court never examined him nor testified at the trial on his mental condition. At the hearing of the petition the petitioner presented evidence in the sense that from his medical record in the penitentiary it did not appear that by the date of the trial he had been examined as to his mental condition, although such examination could or could not appear in the record. Nor was any mental examination performed upon him at the time of his commitment. In 1962 the penitentiary authorities deemed it necessary to submit him to a psychiatric examination because of a series of acts showing that the person was not well. This examination did not reveal psychosis.

During the trial there was incorporated in the record the content of a report dated May 1, 1950, appearing in petitioner's penal record, to the effect that he had been confined in Dannemora State Hospital from 1931 to 1938 and from 1941 to 1949 as a result of a diagnosis of psychosis accompanied by mental deficiency and periods of excitement and was a paranoic. Another psychological examination performed on April 18, 1950, showed a mental age of 9 years 5 months and an intelligence quotient of 63.[1]

Petitioner requested that the physicians designated to examine him be summoned. The court ordered that one of

---

[1] Petitioner was 47 years old when he was prosecuted.

them, Dr. Ramón Señeriz, be summoned to appear at the next hearing bringing with him any evidence in his possession as to whether or not petitioner had undergone an examination. Dr. Señeriz did not appear at the next hearing.[2]

After referring once more to the content of the reports on petitioner's mental condition since 1931, which the district attorney accepted as an established fact, the record shows:

"HON. JUDGE PALMER:

The proceedings do not appear in the record of the case. An order is issued to attach to this case the record of criminal case G-52-97 and G-52-87. They should be attached to the record of this case. Unless you have any other suggestion, the court will consider the case submitted on this evidence.

"MR. VELASCO:

If that is the evidence which the court deems necessary in the case, we would submit it on that evidence."[3]

On June 4, 1962, the trial court passed upon the petition and rendered the following judgment:

"FINDINGS OF FACT—Petitioner is serving sentence under defendant's custody by virtue of the judgment of February 9, 1962,* in which case G-52-97 of this court he was sentenced to serve from 5 to 10 years in the penitentiary for the offense of grand larceny. He is also serving a sentence for the same offense and for a like term, according to the judgment of the same date rendered in case G-52-87 of this court. In both cases he pleaded guilty.

"On a certain occasion during the prosecution of the case G-52-87 the court ordered that petitioner be submitted to a mental examination in order to determine whether his mental condition was such as to warrant further prosecution. There is no evidence as to whether the examination was performed and

---

[2] It is not known whether or not he was summoned.

[3] Apparently petitioner's attorney understood that the judge deemed that the evidence heard was sufficient, and perhaps he did not insist for that reason on the appearance and testimony of Dr. Señeriz.

* 1953.

the findings thereof. The order on the mental examination was issued on February 20, 1952, and the sentences in question were passed one year later, February 9, 1953, and, as stated, on the plea of guilty which was never challenged. CONCLUSIONS OF LAW—Under the aforesaid circumstances, there is no legal basis for vacating those sentences which petitioner is serving at present, wherefore this petition should be denied.

"There is no evidence that defendant was insane at the time he pleaded guilty on which the judgments in question were rendered, nor that the court acted without power in sentencing a person who was insane at that time. JUDGMENT—The petition is hereby denied. Let it be registered and notified. San Juan, Puerto Rico, June 4, 1962."

It appears from record G-52-97 that on January 23, 1962, the petitioner requested the transcript of evidence of the proceedings had at the hearing of the criminal causes in connection with a petition for habeas corpus, CS-59-7513, which he claimed was denied. This motion for transcript of evidence was denied to petitioner on April 12, 1962.

In his memorandum the Solicitor General says:

"The existing record contains many gaps. We do not know what happened after November 18, 1952, the date of the second order of the trial court requiring the presentation of the report of the expert psychiatrists. We do not know whether an examination was performed, or if it was, whether the report was submitted to the court. We do not know what happened at the hearing of December 15, 1952, as a result of which the trial was set for February 9, 1953.

"These gaps were not supplied by the evidence introduced at the hearing of the petition for habeas corpus. At that hearing appellant moved to attach to the record the proceedings of cases G-52-87 and G-52-97, the contents of which we already know. With the testimony of Ceferina Cedeño, psychologist of the Commonwealth Penitentiary, petitioner-appellant merely established that a psychiatric report requested by a court prior to the date the prisoner was committed to the penitentiary would not appear in the records in her custody, unless the director of the institution requested it, and that the medical record

of petitioner-appellant merely disclosed that he underwent a psychiatric examination in 1962. At the hearing held on May 15, 1962, the defense attorney requested, and it was so ordered by the court, that one of the medical experts, Dr. Ramón Señeriz, be summoned for the purpose of establishing with his testimony that the medical report was never submitted to the trial court. That witness did not appear on May 24, 1962, the date set to proceed with the hearing, and the legal counsel for petitioner-appellant made no further efforts to procure the appearance of Mr. Señeriz. Lastly, petitioner did not take the witness stand although it was announced that he would for the purpose of clarifying the occurrence at the trial on February 9, 1953.

"Two equally feasible premises appear from the evidence which the Superior Court had under consideration: (1) that the physicians submitted their report finding defendant sane, and that the trial proceeded accordingly; (2) or that the physicians did not submit their report, but upon observing the defendant's behavior on December 15, 1952 the court had no substantial doubt of defendant's capacity to go to trial and set the same for February 9, 1953. It is likely that the physicians found defendant insane and that, notwithstanding, the court submitted him to trial, but this is highly improbable, and, furthermore, it was not even alleged."

Notwithstanding the foregoing, the Solicitor General concludes:

"In either of the two cases the trial court acted correctly: in the first, because the law expressly provides that if the finding of the experts is that defendant is sane, the court shall proceed to set the trial; and in the second, because the court had power to exercise its discretion anew in the light of subsequent occurrences. The trial court could have had substantial doubt as to the sanity of the prisoner on February 20, 1952, and not have any on December 15, 1952. Ten months had elapsed during which defendant could have recovered his reason, if he ever lacked it, so that by December 15, 1952, he would be in a position to understand the proceedings had against him and to conduct his defense rationally."

Further on, referring to the evidence on petitioner's mental condition since 1931, he comments:

"This evidence shows at the most that at the time of arraignment, namely, February 20, 1952, the court could have substantial doubt as to defendant's sanity and for that reason it ordered that he be submitted to psychiatric examination. The evidence shows nothing on defendant's mental condition on December 15, 1952, when the trial date was fixed. Although petitioner-appellant had the burden of proof in this matter, he did not introduce any evidence in support of his allegation that the medical experts never submitted a report. Assuming that there was no medical report, the court was able to reevaluate the situation 10 months later and decide that defendant was mentally competent to go to trial.

."The errors assigned were not committed."

██ Under the circumstances set forth in the record, we cannot agree with the judgment of the trial court and it is difficult to concur in the final disposition of the entire situation proposed by the Government. The inquiry into the legality of petitioner's imprisonment which by way of habeas corpus was opened in this case was not determined by the judgment. After judgment was rendered the question raised remained in the same situation in which it was when the writ was issued and the proceedings were commenced. This Court cannot sanction the judgment appealed from on the basis of the existence of different premises equally possible: that defendant was found sane by the physicians and for that reason he was prosecuted; or that the physicians did not submit a report and the court nonetheless, on its own observation, tried the petitioner; or that the physicians found the petitioner insane and that the court nonetheless submitted him to trial, without the trial court determining in the habeas corpus proceeding which of those assumptions, which constituted the litigious question, took place. Nor could we even sanction the judgment considering that the facts were part of the judicial proceedings of a court of record such as the Superior Court.

■ Approaching the problem now from the point of view of the applicable law, § 439 of the Code of Criminal Procedure—1935 ed.—provides that a person cannot be tried, adjudged to punishment, or punished for a public offense while he is insane. The following § 440 provides that if a substantial doubt arises as to the sanity of the defendant, the court *must order* the question as to his sanity to be submitted to three experts designated by the court, and the trial or the pronouncing of the judgment "must be suspended *until the question is determined by their decision.*" Section 441 prescribes the procedure to be followed in passing upon the "question of insanity," and § 442 directs that "if the experts find the defendant sane," the trial must proceed or judgment be pronounced. If they find him insane, the trial or judgment must be suspended until he becomes sane.[4]

■ It is alleged, and that criterion seemed to have great weight in the trial court, judging by the statements made in the course of the trial, that the question of whether or not to submit a defendant to a psychiatric examination as a condition to prosecute him, is discretionary with the court. This Court has said that in principle it is the product of the exercise of sound discretion, since the statute makes the examination mandatory—§ 440—if any substantial doubt arises in the court as to the defendant's sanity. In *People* v. *Nazario*, 53 P.R.R. 226 (1938), we held in this connection that the court was not bound to grant a motion to investigate the mental condition of a defendant by the mere fact that the motion is accompanied by affidavits, and that it could open the matter to discussion and proof deciding it according to law in the exercise of its discretion. And see *People* v. *Villarrubia*, 54 P.R.R. 329 (1939), and *People*

---

[4] As of July 30, 1963, the situation is governed by Rule 240 of the Rules of Criminal Procedure.

v. *Báez*, 67 P.R.R. 279 (1947), where we said that a motion made under § 440 of the Code of Criminal Procedure is addressed to the discretion of the court, that we should not interfere with its action unless it has abused its discretion, and that the procedures to submit the defendant to psychiatric treatment are necessary only if a substantial doubt has arisen in the mind of the trial judge as to defendant's sanity.

■ But we have also held, *People* v. *District Court*, 63 P.R.R. 368 (1944), that where defendant's mental condition has been submitted to examination, the question may be disposed of only by the decision of the medical experts. See *Iturrino* v. *District Court*, 50 P.R.R. 901 (1937), and *People* v. *Nazario, supra. Cf. People* v. *Cruz*, 84 P.R.R. 433 (1962). In *People* v. *District Court*, on which we commented, the experts testified that defendant was not insane. The determination of the situation seemed somewhat difficult and they themselves suggested that defendant be committed to the insane asylum for study of his mental condition. In view of that opinion, the court suspended the proceedings and ordered defendant committed to the Psychiatric Hospital. We did not uphold that determination. The physicians having determined that the defendant was sane, we said at p. 370: "The lower court consequently was without authority to take action under § 442 under those circumstances. It is clear that the Code *leaves no room for independent judgment on the matter by the district court;* it is bound by the verdict of the experts on this question. . . . But in the absence of a specific verdict of insanity by the experts, there was no basis under § 442 for the order of the district court committing the defendant to an insane asylum." (Italics ours.)

■ The same reasoning applies to the inverse situation in the case now before us. In the absence of a verdict that the defendant was sane, the court was without power to

submit him to trial on the basis of any independent judgment which it might have had at the time petitioner was prosecuted, without following the procedure prescribed by § 441. This habeas corpus proceeding is not the place for forming judgment as to whether or not on February 20, 1952, the court was warranted, or whether or not it made good use of its discretion, in ordering the suspension of the proceedings and submitting the question of defendant's sanity to the medical experts. In the light of the past history, petitioner's commitment for 15 years as being mentally deranged, and the diagnosis made, we would say that the court at that time was more than warranted in acting as it did, particularly since petitioner's insanity at the time of committing the offenses could also be involved as a defense to responsibility. The order of February 20, 1952, on the matter, which was fully ratified by the order of November 18, nine months later, created a procedural state of law to be decided only through the procedure provided in § 441. It was not discretionary with the Court to circumvent that proceeding nor to decree petitioner's sanity without the intervention of the physicians or through other means, including its own discretion at some subsequent stage.

■ If as a question of reality petitioner was prosecuted and sentenced without following the procedures provided by §§ 441 and 442, his prosecution and sentence were void.

The trial court was under the impression, judging by the statements which it made during the hearing and its final conclusion, that it could only decree the nullity of the proceedings if in the habeas corpus it had been established by evidence that petitioner was actually insane when he was prosecuted. That was not the problem. For the same reason at law which prevented it in the criminal case from making its own conclusion that defendant was sane, the trial court was prevented from making such conclusion in the petition for habeas corpus.

The difficulty herein lies in the fact that because of the insufficiency of the criminal record itself, which is regrettable in a court of record, it cannot be determined with certainty whether or not petitioner was adjudged sane before he was prosecuted. However, that fact alone does not warrant affirmance of the judgment appealed from. After the writ is issued, the habeas corpus constitutes essentially an inquiry opened by the State itself to investigate the validity of the deprivation of freedom of one of its citizens. In that sense the function of the court is not that of a mere passive arbitrator of ordinary adversative controversies who, in making a decision, depends only on those elements of judgment which the adverse parties deem proper to submit to it. In habeas corpus the State has a prime interest to discover the truth where the freedom of the individual is concerned. We believe that the trial court could have called for the production of all the elements of judgment which could have been produced in search of the truth in this case. It should have ordered the transcript of the stenographic notes of the proceedings had in the criminal causes, which undoubtedly would have shed light on these facts. It should have insisted on hearing the testimony of that physician or of the other physicians designated as experts, which it was possible to produce. It could have obtained the records of the district jail in order to determine whether or not petitioner was sent to the Psychiatric Hospital during all the time he was detained awaiting trial; it could have procured the records of this hospital. The entire evidence consisting fundamentally of official records of easy access could have helped to decide the issue.

For these considerations, we believe it is our duty to set aside the judgment appealed from and to remand the case to the trial court in order that it may decide, on that and on any other evidence, whether petitioner was tried without a tribunal of medical experts finding him sane. If in the

light of the evidence such would be the result, its judgments should be set aside.

The judgment appealed from will be set aside and the case remanded to the trial court for further proceedings consistent with the foregoing.